UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS ZIMMERMAN,

                      Plaintiff,

                                        9:06-CV-0176
v.                                           (GLS/GHL)

JOHN W. BURGE, Superintendent of Auburn C.F.,
CAPTAIN ROURKE, Auburn C.F; DONALD
SELSKY, DOCS Director of Special Housing;
JOE WOLZYECK, Hearing Officer at Auburn C.F.;
THOMAS EAGEN, Central Office Review Committee;
ANTHONY ANNUCCI, DOCS Counsel; and
SUPERINTENDENT GRAHAM, New Superintendent of
Auburn C.F.,

                      Defendants.
_____

APPEARANCES:                              OF COUNSEL:

NICHOLAS ZIMMERMAN, 02-A-1663
   Plaintiff, *Pro Se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

HON. ANDREW M. CUOMO              MARIA MORAN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

        This action has been referred to me for Report and Recommendation by the Honorable

Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

72.3(c) of the Local Rules of Practice for this Court.  Generally, in this *pro se* civil rights action

brought pursuant to 42 U.S.C. § 1983, Nicholas Zimmerman ("Plaintiff"), an inmate at Auburn Correctional Facility ("Auburn C.F."), alleges that seven employees of the New York State Department of Correctional Services ("DOCS") violated his constitutional rights when, between July and December of 2005, they (1) punished him a second time for an offense for which he was already being punished, (2) punished him excessively for that offense, and (3) denied him adequate medical care during that punishment. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Currently pending before the Court are (1) Plaintiff's motion for a preliminary and permanent injunction, (2) his motion for partial summary judgment with respect to three of the five claims in his Complaint, under Rule 56 of the Federal Rules of Civil Procedure, and (3) Defendants' cross-motion for partial dismissal of Plaintiff's Complaint (in particular, two of the three claims placed at issue by Plaintiff's motion for partial summary judgment) for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 4; Dkt. No. 25; Dkt. No. 28, Part 5.) For the reasons that follow, I recommend that Defendants' cross-motion be granted and that Plaintiff's two motions be denied. I also recommend that the Court *sua sponte* dismiss one of Plaintiff's five claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6). The net effect of my recommendations, if adopted, would be that two of Plaintiff's five claims would survive the Court's final Order on the pending motions.

## I.    BACKGROUND

### A.    Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint asserts five constitutional claims.  Specifically, Plaintiff alleges that seven employees[1] of DOCS violated his rights under the Fifth, Eighth and Fourteenth Amendments when, between July 20, 2005, and December 14, 2005, they (1) violated his Eighth Amendment right to be free of cruel and unusual punishment by sentencing him to ten years of solitary confinement (in Auburn C.F.'s Special Housing Unit) without sufficient evidence for such punishment, (2) violated his Eighth Amendment right to be free of cruel and unusual punishment by improperly restricting his visitation privileges to "non-contact" visits, (3) violated his Fourteenth Amendment right to due process by refusing to grant his request to remove the aforementioned restriction on his visitation privileges, (4) violated his Eighth Amendment right to adequate medical care in prison by refusing to allow him to receive mental health treatment by participating in Auburn C.F.'s Intermediate Care Program, and (5) violated his Fifth Amendment right to not be twice placed in jeopardy for the same offense when, by placing him in SHU and restricting his visitation privileges, they effectively punished him a second time for a crime for which he was already being punished, namely, trying to escape from Sing Sing Correctional Facility.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

I note that Plaintiff erroneously stylizes his due process right as a Fifth Amendment right,

---

[1]      These seven employees are as follows: (1) DOCS Director of Special Housing / Inmate Disciplinary Program Donald Selsky, (2) DOCS Inmate Grievance Program's Director Thomas G. Eagen, (3) DOCS Counsel Anthony J. Annucci, (4) Auburn C.F. Superintendent Harold D. Graham, (5) former Auburn C.F. Superintendent John W. Burge, (6) Auburn C.F. Captain John R. Rourke, and (7) Auburn C.F. Hearing Officer Joseph Wolczyk ("Defendants"). I note that, although Plaintiff spells the hearing officer's last name "Wolzyeck," it appears to be spelled "Wolczyk."  (*See* Dkt. No. 17, at 2 [Receipt of Service].)

rather than as a Fourteenth Amendment right.[2]  I note also that Plaintiff's Complaint makes no

express mention of his apparent double jeopardy claim (under the Fifth Amendment), which

appears to be expressly asserted, for the first time, in his papers in support of his motion for

summary judgment.  (*Compare* Dkt. No. 1 [Plf.'s Compl.] *with* Dkt. No. 25, at 14-22 [Plf.'s

Mem. of Law].)  However, I overlook such errors, because the Court's duty to construe the

pleadings of *pro se* civil rights litigants with special solicitude requires me to interpret Plaintiff's

Complaint to raise the strongest arguments that it suggests.[3]

---

[2]       *See* U.S. Const. amend V ("No person shall . . . *in any criminal case* . . . be deprived of life, liberty, or property, without due process of law.") [emphasis added]; *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975) ("Prison disciplinary hearings are not criminal proceedings . . . ."); *Robinson v. Vaughn*, 92-CV-7048, 1993 U.S. Dist. LEXIS 15566, at *17 (E.D. Pa. Nov. 1, 1993) ("The rights secured to individuals by the Fifth Amendment are generally applicable against the states only through the Fourteenth Amendment.  The court's consideration of [the prisoner plaintiff's] allegations that the defendants' actions toward him [in the prison disciplinary hearing] violated due process is subsumed within its Fourteenth Amendment analysis of his claims."); *see also McCarthy v. Yost*, 01-CV-9590, 2003 U.S. Dist. LEXIS 3307, at *8, n.4 (S.D.N.Y. Feb. 14, 2003) ("The Due Process Clause of the Fifth Amendment is plainly inapplicable to . . . state actors."); *Shabazz v. Scully*, 91-CV-6319, 1994 U.S. Dist. LEXIS 6630, at *9 (S.D.N.Y. May 19, 1994) ("[T]he Fifth Amendment Due Process provision is inapplicable to state officials . . . .").

[3]       *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("Although the thrust of Cruz's complaint is the (now abandoned) double jeopardy claim, courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") [internal quotation marks and citations omitted]; *see also Phillips v. Girdich*, 408 F.3d 124, 127, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised.  In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

**B.      Plaintiff's Motion for a Preliminary and Permanent Injunction and His
          Motion for Partial Summary Judgment**

In his motion for a preliminary and permanent injunction, Plaintiff requests that the Court

issue an Order enjoining Defendants from denying Plaintiff's request to participate in the Auburn

C.F.'s Intermediate Care Program.  *(See generally* Dkt. No. 4.)

In his motion for partial summary judgment, Plaintiff moves for summary judgment on

three of his claims: (1) his claim of a violation of his Fifth Amendment right to be free from

double jeopardy; (2) his claim of a violation of his Fourteenth Amendment right to due process

regarding the restriction of his visitation privileges; and (3) his claim of a violation of his Eighth

Amendment right to be free of cruel and unusual punishment through the imposition of overly

harsh restrictions on his visitation privileges.  (Dkt. No. 25, at 1, ¶ 1 [Plf.'s Decl.]; Dkt. No. 25,

at 14-31 [Plf.'s Mem. of Law].)  He does not move for summary judgment with respect to his

remaining two claims: (1) his claim of a violation of his Eighth Amendment right to be free of

cruel and unusual punishment through the imposition of a ten-year sentence in SHU without

sufficient evidence; and (2) his claim of a violation of his Eighth Amendment right to adequate

medical care in prison through the refusal to allow him to receive mental health treatment by

participating in Auburn C.F.'s Intermediate Care Program.  (*Id*.)

In his motion for partial summary judgment, Plaintiff also asserts, for the first time, a

claim that his right to equal protection of the laws under the Fourteenth Amendment was

violated, and he moves for summary judgment on that claim as well.  (Dkt. No. 25, at 32 [Plf.'s

Mem. of Law].)  While I liberally construe Plaintiff's Complaint as implicitly attempting to

assert another claim expressly raised for the first time in his motion for partial summary

5

judgment (i.e., his double jeopardy claim), I cannot even liberally construe that Complaint as also attempting to assert an equal protection claim.  First, to spring such a new theory of legal liability on Defendants at this late stage in the proceeding (when Plaintiff concedes that sufficient discovery has occurred to warrant a motion for partial summary judgment) would be an affront to the principle of "fair notice," on which Rule 8 of the Federal Rules of Civil Procedure is premised.[4]  Second, even if I could liberally construe the Complaint as attempting to assert such a claim (which, again, I cannot), I would find that the facts alleged in that Complaint do not plausibly, or even conceivably, suggest such a claim.[5]

### C.    Defendants' Cross-Motion for Partial Dismissal of Plaintiff's Complaint

In their opposition to Plaintiff's two motions, Defendants argue, among other things, that the double jeopardy claim and due process claim addressed by Plaintiff in his motion for partial summary judgment should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 28, Part 5, at 2-3 [Defs.' Mem. of Law].)  In his rely papers, Plaintiff expressly recognizes this argument as a cross-motion of some sort by Defendants.  (Dkt. No. 29, at 1 [Plf.'s Reply Papers, entitled, "Plaintiff's Reply to Defendant's [sic] Motion for Cross Summary Judgement [sic]."].)

---

[4]        *See*, *infra*, Part II.B. of this Report-Recommendation.

[5]        *See Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) ("Phillips also alleges that the prison officials violated his equal protection rights [by, among other things, restricting his visits to non-contact visits].  Because Phillips does not allege he was a member of a protected class or that a fundamental right was violated, he must show that 'similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.' . . .  He also must show intentional or purposeful discrimination.
 . . .  The existence of prison regulations is not enough to meet this burden and Phillips has not proven disparate treatment, the absence of a rational relationship to any legitimate penal interest, or intentional discrimination.  Thus, his equal protection claim fails.").

However, Plaintiff fails to squarely address that argument.  (*Id.*)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[6] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[7]  Furthermore, before the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial," the moving party must meet its initial burden of establishing the absence of any genuine issue of material fact.[8]  This initial burden, while modest, is not without some substance.[9]  Among other

---

[6]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[7]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[8]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[9]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[A] district court may not grant [a] motion [for summary judgment] without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary

things, it includes the burden to provide a Statement of Material Facts that complies with Local

Rule 7.1 of the Local Rules of Practice for this Court.[10]

### B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

As noted above, in their opposition to Plaintiff's two motions, Defendants argue, in part,

that the double jeopardy claim and due process claim addressed by Plaintiff in his motion for

partial summary judgment should be dismissed for failure to state a claim upon which relief may

be granted under Rule 12(b)(6).  (Dkt. No. 28, Part 5, at 2-3 [Defs.' Mem. of Law].)  Moreover,

it is important to note that, even where a defendant has not requested dismissal based on the

failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua*

*sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be

---

judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n
determining whether the moving party has met this burden of showing the absence of a genuine
issue for trial, the district court may not rely solely on the statement of undisputed facts contained
in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in
the record supports the assertion.") [internal quotation marks and citations omitted]; *Champion v.
Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("Such a motion may properly be granted only if the facts
as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment
as a matter of law.") [internal quotation marks and citation omitted].  This requirement (that the
Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by
Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-
moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to
the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been
"properly filed" and "the Court determines that the moving party has met its burden to
demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis
added].

[10]      *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any motion for summary judgment shall contain a
Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered
paragraphs, each material fact about which the moving party contends there exists no genuine
issue.  Each fact listed shall set forth a specific citation to the record the fact is established.").

granted.[11]

For these reasons, it is appropriate to briefly summarize the recently revised legal

standard governing Rule 12(b)(6) motions to dismiss.  Under Rule 12(b)(6) of the Federal Rules

of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a

defendant may base such a motion on either or both of two grounds: (1) a challenge to the

"sufficiency of the pleading" under Rule 8(a)(2);[12] or (2) a challenge to the legal cognizability of

the claim.[13]

---

[11]    The authority to conduct this *sua sponte* analysis is derived from two sources: (1)
28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a
prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . .
is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .
seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's]
complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to
state a claim upon which relief may be granted . . . ."

[12]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.
8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.
Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests
the formal legal sufficiency of the complaint, determining whether the complaint has conformed to
Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled
to relief.'").

[13]    *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations
give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.
 . . . In addition, they state claims upon which relief could be granted under Title VII and the
ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction
between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a
plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187
(2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."[14] The purpose of this rule is to "facilitate a proper decision on the merits."[15] A complaint

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to assess the

sufficiency of [plaintiff's] claims."[16]

---

complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[14]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[15]      *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[16]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. &*

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[17]  However, it is well established that even this liberal notice pleading standard "has its limits."[18]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[19]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

_____

*Co.*, 104 F.3d 355 [2d Cir. 1996]).

[17]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[18]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[19]     *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

11

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[20] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[21] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[22] In other words, while all pleadings are

_____

[20]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[21]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[22]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[23]  In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[24]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[25]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[26]  In addition, "[t]here are circumstances where an overly litigious inmate, who is quite

---

[23]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[24]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[25]     *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[26]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of

familiar with the legal system and with pleading requirements, may not be afforded [the] special

solicitude" or status that is normally afforded *pro se* litigants.[27]

### C.    Revocation of Special Status of Overly Litigious *Pro Se* Civil Rights Litigants

Generally, the rationale for revoking the special status of overly litigious *pro se* civil

rights litigants (at least in the Second Circuit) is not that the *pro se* litigant should be punished

but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason

for conferring the special status upon *pro se* litigants in the first place.[28]   Moreover, permitting

---

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[27]    *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted]; *see also Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).

[28]    **Second Circuit Cases:** *See, e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).

**N.D.N.Y. Cases:** *See, e.g.*, *Carlisle v. Goord*, 03-CV-0296, 2007 WL 2769566, at *9 (N.D.N.Y. Sept. 21, 2007) (Scullin, J., adopting Report-Recommendation of Lowe, M.J.); *Shomo v. N.Y. D.O.C.S.*, 04-CV-0910, 2007 WL 2580509, at *3-4 (N.D.N.Y. Sept. 4, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7-8 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting Report-Recommendation of Lowe, M.J.); *Tracy v. Freshwater*, 01-CV-0500, 2007 WL 2230068, at *2-4 (N.D.N.Y. July 31, 2007) (Munson, J., adopting Report-Recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 (N.D.N.Y. July 11, 2007) (McAvoy, J.,

experienced *pro se* litigants to retain their special status would tilt the scales of justice unfairly in

favor of the *pro se* litigant and against his opponents.[29]   As observed by Judge Irving R.

adopting Report-Recommendation of Lowe, M.J.); *Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *4-6 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Rolle v. Garcia*, 04-CV-0312, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Mora v. Bockelmann*, 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *2-3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Mitchell v. Harriman*, 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting Report-Recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.).

      **S.D.N.Y. Cases:** *See, e.g.*, *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

      **W.D.N.Y. Cases:** *See, e.g., Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004).

      **E.D.N.Y. Cases:** *Cf. Wechsler v. R D Mgmt. Corp.*, 861 F. Supp. 1153, 1157 (E.D.N.Y. 1994) (explaining that special solicitude is extended to *pro se* litigants because of their lack of legal training, and questioning whether such solicitude should be extended to *pro se* litigants who are in fact sophisticated in the law); *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 16 (E.D.N.Y. 1996) ("[P]*ro se* litigants are held to a more lenient standard than professional counsel, with Rule 11's application determined on a sliding scale according to the litigant's level of sophistication.") [citing cases].

    [29]     *Standley*, 2007 WL 2406909, at *7 & n.34; *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment

Kaufman, of the Second Circuit, regarding an active *pro se* litigant nearly 45 years ago:

> He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel.  But this should not shield him from rebuke when merited.  He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals.  We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits.  Moreover, we are not to be manipulated by resourceful but meritless moves . . . . [which] serve only to distract us from important judicial business.[30]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced.  Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[31]

---

Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev.* 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro* se litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

[30]     *Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring)].

[31]     *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Standley*, 2007 WL 2406909, at *7 & n.35; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

16

There is, of course, no formula for determining "How many is too many?" However, *generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[32] Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases.[33] However, there appear to be *more* cases refusing to revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases.[34]

---

[32] *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Standley*, 2007 WL 2406909, at *8 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had previously filed **sixteen** federal or state court actions or appeals); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone). Interestingly, this *de facto* "rule of twelve" is consistent with the California Code of Civil Procedure, which declines to extend a reduction in small-claims-court filing fees to those litigants who have filed more than 12 small-claims lawsuits in the state within the previous 12 months. *See* Cal. Civ. Proc. § 116.230 (2006).

[33] *See, e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **ten** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed **eight** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed **seven** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **seven** lawsuits pending in Western District).

[34] *See, e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eleven** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eight** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as (1) the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or memoranda of law, etc),[35] (2) whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals,[36] and (3) whether or not the *pro se* litigant has received sufficient formal legal training to familiarize him

---

inmate who had filed **six** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed **five** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of **five** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

[35]     *See, e.g., Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc."), *accord, Standley*, 2007 WL 2406909, at *8.

[36]     *See, e.g., Standley*, 2007 WL 2406909, at *8 & n.45 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had been victorious or partially victorious in at least four of his previous actions or appeals); *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

with legal procedure and terminology.[37]

Here, Plaintiff has filed at least six other federal or state actions or appeals.[38]  One of those actions was resolved in Plaintiff's favor.[39]  Not surprisingly, Plaintiff's filings in this action have been quite good, always being well organized, and almost always being supported by

---

[37]       *See*, *e.g.*, *Walker v. Suburban Hosp. Ass'n*, No. 90-1506, 1991 U.S. App. LEXIS 4049, at *3, n.2 (4th Cir. March 13, 1991) ("Walker is not due the lenient treatment accorded pro se litigants. Walker has . . . a law degree. . . . Certainly, the policies underlying the Court's admonitions to accord pro se litigants an understanding view of their pleadings and conduct do not have force in this context."); *Heimbaugh v. San Francisco*, 591 F. Supp. 1573, 1577 (N.D. Cal. 1984) ("While plaintiff appears [pro se], he is schooled in the law, having recently completed law school . . . . There is every reason to hold him to the certification he made by signing the pleadings he has filed in this action."); *Pham v. U.S.*, 317 F.3d 178, 186-188 (2d Cir. 2003) (relying on fact that *pro se* prisoner was "not trained in the law," and that he was "untutored," when explaining reason for extending him special solicitude under the circumstances); *Iwachiw v. N.Y. City Bd. of Educ.*, 2007 U.S. Dist. LEXIS 8040, at *12 (E.D.N.Y. Feb. 5, 2007) ("This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.") [internal quotation marks and citations omitted]; *cf.* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted], *accord*, *Saunders*, 2006 WL 3051792, at *2, n.15.

[38]       *See Zimmerman v. Superintendent Burge*, 06-CV-1007 (E.D.N.Y.) (habeas corpus action, filed 2/16/06 in N.D.N.Y.; transferred to E.D.N.Y. on 3/6/06; dismissed on 6/26/07; Plaintiff's appeal to Second Circuit pending); *Zimmerman v. John Doe 1*, 04-CV-5032 (E.D.N.Y.) (prisoner civil rights action, filed 11/19/04; dismissed on 5/12/06, based on voluntary withdrawal of Plaintiff's claims in exchange for receipt of $400); *Zimmerman v. Seyfert*, 03-CV-1389(TJM/GJD) (N.D.N.Y.) (prisoner civil rights action, filed 11/17/03; dismissed on 7/19/07; Plaintiff's appeal to Second Circuit pending); *Zimmerman v. Superintendent Smith*, Index No. 004118/2003 (N.Y. State Sup. Ct., Ulster County) (Article 78 proceeding, filed on 1/12/04; dismissed on 5/5/04).

[39]       *See Zimmerman v. John Doe 1*, 04-CV-5032 (E.D.N.Y.) (prisoner civil rights action, filed 11/19/04; dismissed on 5/12/06, based on voluntary withdrawal of Plaintiff's claims in exchange for receipt of $400).

exhibits and/or declarations.  However, after thoroughly considering the matter, I find that Plaintiff's litigation experience is not sufficiently extensive to warrant the revocation of his special status as a *pro se* litigant.  Plaintiff is cautioned, however, that he is fast becoming more a pro litigant than a *pro se* litigant.

## III.   ANALYSIS

### A.   Plaintiff's Fifth Amendment Double Jeopardy Claim

Defendants are correct when they argue that Plaintiff's double jeopardy claim should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6). (Dkt. No. 28, Part 5, at 2 [Defs.' Mem. of Law].)  It is, indeed, well settled in the Second Circuit that facing a hearing on a prison disciplinary charge cannot be construed as being "put in jeopardy of life or limb" for purposes of the Double Jeopardy Clause of the Fifth Amendment. *See* U.S. Const. amend V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . .").  This is because prison disciplinary proceedings are civil, not criminal, in nature.  *See Porter v. Coughlin*, 421 F.3d 141, 149 (2d Cir. 2005) ("For all the reasons stated above, we find that the disciplinary proceeding was civil in nature and therefore presented no violation of the Double Jeopardy Clause."); *Encarnacion v. McGinnis*, 02-CV-6380, 2005 WL 3018728, at *3 (W.D.N.Y. Oct. 26, 2005) ("[T]he double jeopardy clause is limited to criminal proceedings and does not pertain to prison disciplinary hearings.") [internal quotations and citations omitted]; *Lisbon v. Goord*, 02-CV-3567, 2003 U.S. Dist. LEXIS 7135, at *6 (S.D.N.Y. Apr. 28, 2003) ("[T]he double jeopardy clause [of the Fifth Amendment] is limited to criminal proceedings and thus it does not pertain to prison disciplinary hearings.") [internal quotations and citation omitted].

I reach the same conclusion (i.e., that Plaintiff's double jeopardy claim should be dismissed for failure to state a claim upon which relief may be granted) for the alternative reason that, by failing to address in his reply papers Defendants' argument in their properly filed response papers,[40] Plaintiff has "consented" to that argument under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[41]

Finally, I reach the same conclusion for the second alternative reason that, because Plaintiff has moved for summary judgment with regard to his double jeopardy claim, the Court may *sua sponte* grant summary judgment against him with regard to that claim, if the record evidence warrants such a disposition. *See Ramsey v. Coughlin*, 94 F.3d 71, 73 (2d Cir. 1996) (one party's motion for summary judgment on a claim may lead to a *sua sponte* grant of summary judgment for the opposing party on that claim, even without a formal cross-motion addressing that claim). Here, I find that the record evidence does, indeed, warrant such a disposition. Specifically, the uncontroverted record evidence is that Plaintiff's disciplinary conviction was rationally connected to the nonpunitive purpose of maintaining institutional

---

[40]     (Dkt. No. 29, at 2 [Plf.'s Reply Papers].)

[41]     N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *see, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

order.  First, it is uncontroverted that, on June 7, 2005, Plaintiff was sentenced in Westchester

County Court to at least nine years in prison based on his conviction of several offenses,

including Escape in the First Degree.[42]  Second, it is uncontroverted that, on July 20, 2005,

Defendant Wolzyck (1) found that Plaintiff had violated Rule 1.00 of DOCS' Standards for

Inmate Behavior due to his aforementioned criminal conviction in Westchester County Court,

and (2) sentenced Plaintiff to 120 months confinement in the Auburn C.F. SHU, because the acts

giving rise to his criminal conviction "pose[] the most serious threat . . . [that] could be presented

to . . . correctional safety."[43]  As a result, there is no evidence in the record from which a rational

---

[42]      (*Compare* Dkt. No. 25, at 10, ¶ 2 [Plf.'s Rule 7.1 Statement, asserting some of the referenced facts, along with other facts, but not supporting those factual assertions with record citations] *with* Dkt. No. 28, Part 4, ¶ 2 [Defs.' Rule 7.1 Response, admitting referenced facts, but not supporting their assertions with record citation]; *see also* Dkt. No. 25, at 36 [Ex. D to Plf.'s Motion, attaching Superintendent Hearing Disposition dated 7/20/05, reporting fact of Plaintiff's referenced criminal convictions and sentencing], *accord*, Dkt. No. 25, at 33 [Ex. A to Plf.'s Motion, attaching Inmate Misbehavior Report 6/8/05], Dkt. No. 25, at 38 [Ex. E to Plf.'s Motion, attaching Plaintiff's appeal from disciplinary hearing determination, in which he admits conviction in Westchester County Court for several offenses, including bribery and escape].)

[43]      (*Compare* Dkt. No. 25, at 10, ¶ 3 [Plf.'s Rule 7.1 Statement, asserting some of the referenced facts, along with other facts, but not supporting those factual assertions with record citations] *with* Dkt. No. 28, Part 4, ¶ 3 [Defs.' Rule 7.1 Response, admitting some of referenced facts, and supporting their assertions with accurate record citation]; *see also* Dkt. No. 25, at 36 [Ex. D to Plf.'s Motion, attaching Superintendent Hearing Disposition dated 7/20/05, reporting reason for Plaintiff's disciplinary conviction and sentence, namely, that the crime of which Plaintiff was convicted in County Court "poses the most serious threat . . . [that] could be presented to . . . correctional safety"], *accord*, Dkt. No. 25, at 35 [Ex. C to Plf.'s Motion, attaching Superintendent Hearing Disposition dated 7/20/05, reporting finding of guilt regarding referenced disciplinary charge, reporting referenced sentence, and reporting identity of referenced hearing officer], Dkt. No. 25, at 33 [Ex. A to Plf.'s Motion, attaching Inmate Misbehavior Report 6/8/05, reporting nature and basis of disciplinary charges filed against Plaintiff], Dkt. No. 25, at 38-39 [Ex. E to Plf.'s Motion, attaching Plaintiff's appeal from disciplinary hearing determination, in which he admits reason for disciplinary conviction and sentence, namely, the fact that he had been convicted in County Court of attempted escape].)  *See also* 7 N.Y.C.R.R. § 270.2 (entitled "Standards of inmate behavior," and providing, in pertinent part, "[T]he following is a list of prohibited behavior in all correctional facilities.  Violation of any of the rules will

fact-finder could conclude that Plaintiff's disciplinary sentence was *not* rationally connected to the nonpunitive purpose of maintaining institutional order.[44]  In short, Plaintiff's disciplinary sentence was not criminal, but remedial or preventative, in nature.

For all of the foregoing alternative reasons, I recommend that the Court dismiss Plaintiff's Fifth Amendment double jeopardy claim.

## B.    Plaintiff's Fourteenth Amendment Due Process Claim Based on Visitation Restriction

I agree with Defendants' ultimate conclusion that, as a matter of law, Plaintiff did not possess a procedural due process right with respect to the decision to restrict his visitation privileges, although I disagree somewhat with their reasoning, which led Plaintiff to miss the point regarding the fatal flaw inherent in his claim.  (*Compare* Dkt. No. 28, Part 5, at 3 [Defs.' Mem. of Law] *with* Dkt. No. 29, at 2 [Plf.'s Reply Mem. of Law].)

The procedural component of the Due Process Clause of the Fourteenth Amendment bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law." *Zinernon v. Burch*, 494 U.S. 113, 125-26 (1990).  "[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ."

----

result in appropriate disciplinary sanction.  A. PENAL LAW OFFENSES[.]  Rule 1.00[.]  Any Penal Law offense may be referred to law enforcement agencies for prosecution through the courts.  In addition, departmental sanctions may be imposed based upon a criminal conviction.").

[44]      I note that the Second Circuit has recognized that "[w]hile [prison disciplinary] sanctions do have a deterrent effect, that deterrent effect is aimed exclusively at deterring conduct within the prison setting." *Porter*, 421 F.3d at 147 [internal quotation marks and citation omitted].

*Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  As a result, if a plaintiff possessed no liberty or property interest in whatever he was (allegedly) deprived of, then he possessed no right to due process with respect to that deprivation.[45]

The first question, then, is whether Plaintiff possesses a liberty or property interest in what the courts have traditionally called "contact visitation privileges," while in prison.[46]  In order to answer the question, it is necessary to step back and review the nature of Plaintiff's civil rights action, which is brought pursuant to 42 U.S.C. § 1983.

Section 1983 provides, in pertinent part, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution

---

[45]     By not expressly setting forth the above-referenced two-part legal standard, Defendants inadvertently failed to disabuse Plaintiff of the notion that he need not possess a liberty or property interest with regard to visitation, causing him to (erroneously) argue, "I am not arguing that the Constitution gives prisoners a right to visit.  I am stating that the Defendants violated my due process [rights] by not following the rules," namely Section VIII of Directive 4403, which states, among other things, that, if a visitor requests a hearing on the restriction of visitation privileges, the facility superintendent should hold such a hearing.  (*Compare* Dkt. No. 28, Part 5, at 3 [Defs.' Mem. of Law] *with* Dkt. No. 29, at 2 [Plf.'s Reply Mem. of Law].)

[46]     *See, e.g.*, *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) ("Barnett contends that the district court erred by dismissing his claim that he had a right to contact visitation privileges.  We disagree.  [P]risoners [have] no constitutional right to such privileges.") [citation omitted]; *Syncate-El v. Toombs*, No. 92-1421, 1992 U.S. App. LEXIS 27697, at *4 (6th Cir. Oct. 21, 1992) ("Syncate-El's allegation that he has a constitutionally protected liberty interest in contact visitation is meritless.  It is well settled that there is no inherent constitutionally protected right of prisoners to contact visits.") [citation omitted], accord, *Nkrumah v. Clark*, No. 91-2466, 1992 U.S. App. LEXIS 25067, at *12-13 (7th Cir. Sept. 21, 1992) (using similar term and reaching same conclusion).

and laws" refers to the United States Constitution and *federal* laws.[47]  A violation of a state law

or regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[48]

Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State

law or regulation;[49] this is because a DOCS Directive is "merely a system the [DOCS]

Commissioner has established to assist him in exercising his discretion," which he retains,

despite any violation of that Directive.[50]

    Having said that, it is true that a state may, *under certain circumstances*, create a liberty

interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of

---

[47]    *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

[48]    *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings . . . do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

[49]    *See Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) (citation omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

[50]    *See Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

certain statutory or regulatory measures.  At one point, the Supreme Court held that a state created such a liberty interest if it repeatedly used explicit language of an unmistakably mandatory character in connection with requiring specific substantive predicates.  *Hewitt v. Helms*, 459 U.S. 460, 466-472 (1983).[51]  However, that rule created a perverse incentive (1) for inmates to "comb" state regulations for mandatory language upon which to base claims of entitlements, (2) for courts to draw negative inferences from mandatory language in state regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion."  *Sandlin v. Connor*, 515 U.S. 472, 477-84 (1995).  As a result, the Supreme Court changed the rule, shifting the courts' focus from the language of a particular state law or regulation to the nature of the deprivation.  *Sandlin*, 515 U.S. at 483-84.[52]  Specifically, in 1995, the Supreme Court held that, while states may still under certain circumstances create a liberty interest protected by the Fourteenth Amendment's Due Process Clause, the interest "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandlin*, 515 U.S. at 483-84.

---

[51]     Defendants appear to somewhat misperceive the state of the law with respect to due process claims, arguing that "there is no mandatory language in any New York State statute or regulation conferring the right to contact visits."  (Dkt. No. 28, Part 5, at 3 [Defs.' Mem. of Law].)  Whether a state statute or regulation contains mandatory language is no longer the determinative factor in deciding whether or not a due process right exists.

[52]     *See also Blouin v. Spitzer*, 356 F.3d 348, 362-363 (2d Cir. 2004) (recognizing abrogation or modification of prior rule which focused on language of state regulation), *accord*, *Anderson v. Recore*, 317 F.3d 194, 198-200 (2d Cir. 2003), *Watson v. City of N.Y.*, 92 F.3d 31, 37-38 (2d Cir. 1996), *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

As a result, the issue before the Court is whether the restriction on visitation privileges that Plaintiff alleges in his Complaint imposes on him *an atypical and significant hardship in relation to the ordinary incidents of prison life*.  After reviewing the case law on the issue, I answer this question in the negative.

Following the Supreme Court's issuance of its decision in *Sandlin v. Connor* in 1995, it appears that in a majority (if not the entirety) of the circuits–including the Second Circuit–prisoners have no protected liberty interest in contact visits.[53]  Notably, in 1997, then-

_____

[53]  **Second Circuit:** *See Saxon v. Goord*, 06-CV–0826, 2007 U.S. Dist. LEXIS 41553, at *12 (W.D.N.Y. June 7, 2007) ("It is well-established that contact visits are a *privilege* for inmates, not a *right*.") [emphasis in original; citations omitted]; *Baskerville v. Goord*, 97-CV-6413, 1998 U.S. Dist. LEXIS 17603, at *17-18 (S.D.N.Y. Nov. 5, 1998) ("It is well established . . . that contact visits of prison inmates are a privilege for inmates, not a right, and thus do not give rise to a liberty interest protected by the due process clause.") [citations omitted]; *Giano v. Goord*, 9 F. Supp.2d 235, 241 (W.D.N.Y. 1998) ("It is well-established that contact visits are a privilege for inmates, not a right.") [citations omitted], *vacated in part on other grounds*, 250 F.3d 146 (2d Cir. 2000); *cf. Champion v. Artuz*, 76 F.3d 483, 486 (1996) ("The dismissal of Champion's due process claim was proper because the state regulations permitting correctional facilities to allow conjugal [contact] visits to prisoners did not give Champion a liberty interest in such visits.").

**Fifth Circuit:** *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) ("Berry has no constitutional right to [any] visitation privileges.") [citation omitted]; *Brown v. Day*, 99-CV-1436, 1999 U.S. Dist. LEXIS 15970, at *18 (E.D. La. Oct. 7, 1999) ("Prisoners . . . have no protected liberty interest in contact visits.") [citations omitted].

**Sixth Circuit:** *See Corley v. Burnett,* No. 95-6451, 1997 U.S. App. LEXIS 7181, at *3 (6th Cir. Apr. 11, 1997) ("[Plaintiff] has no constitutional right to contact visits.") [citations omitted]; *Bazzetta v. McGinnis,* 124 F.3d 774, 779 (6th Cir. 1997) ("[T]here is no inherent, absolute right to contact visits with prisoners.") [citations omitted]; *Conway v. Wilkinson*, 05-CV-0820, 2007 U.S. Dist. LEXIS 21177, at *10-11 (S.D. Ohio March 26, 2007) ("[P]rison visitation is not a liberty interest which can be derived from the Fourteenth Amendment and which enjoys constitutional protection.  Thus, Mr. Conway cannot prevail on his due process claim, because he simply has no protected liberty interest in being able to visit his family at all, let alone an interest in having the visit conducted under less restrictive circumstances than are presently allowed.").

**Seventh Circuit:** *See Reed v. Garnett*, 05-CV-0716, 2006 U.S. Dist. LEXIS 88936, at *8 (S.D. Ill. Dec. 8, 2006) ("Plaintiff also claims that he was . . . denied contact visits [among other things] . . . .  However, these allegations also do not present a viable constitutional

District Judge Rosemary S. Pooler issued a decision holding, "It is well established that contact visits for prisoners are only a privilege and not a right. . . .  Prohibition of contact visits can be vital to the internal security of a prison. . . ."  *Gatson v. Selsky*, 94-CV-0292, 1997 U.S. Dist. LEXIS 4210, at *9 (N.D.N.Y. Apr. 4, 1997) [citations omitted].  Although Judge Pooler did not expressly rely on the Supreme Court's decision in *Thornburgh v. Abbott*, 490 U.S. 401 (1988), in reaching her conclusion in *Gatson*, her sentiment regarding prison security is shared by the Supreme Court in that decision:

> Many categories of noninmates seek access to prisons.  Access is essential to . . .  [among other persons] families and friends of prisoners who seek to sustain relationships with them, . . .  All these claims to prison access undoubtedly are legitimate; yet prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison.  Acknowledging the expertise of these officials and that the judiciary is ill equipped to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.

*Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1988) [internal quotation marks and citations omitted].  Simply stated, restrictions on the conditions in which inmates may visit with non-inmates would appear to be a hardship on inmates that is rather typical and necessary (in relation

---

claim.").

  **Eighth Circuit:** *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("A prisoner does not have a liberty interest in contact visitation.") [citations omitted].

  **Ninth Circuit:** *See Ransom v. Johnson*, 05-CV-0086, 2007 U.S. Dist. LEXIS 15234, at *7 (E.D. Cal. March 5, 2007) ("Plaintiff does not have a protected liberty interest in . . . contact visitation.") [citations omitted]; *Rizzo v. Yates*, 05-CV-1270, 2006 U.S. Dist. LEXIS 37101, at *6 (E.D. Cal. May 25, 2006) ("Plaintiff does not have a constitutionally protected right to contact visitation.") [citations omitted]; *Wiggins v. Gomez*, 94-CV-0607, 1996 U.S. Dist. LEXIS 2351, at 3-4 (N.D. Cal. Feb. 28, 1996) ("Prisoners . . . have no constitutional right to contact . . . visitation.") [citations omitted].

to the ordinary incidents of prison life).

Finally, I reach the same general conclusion (i.e., that the Court should dismiss Plaintiff's due process claim regarding visitation restrictions) on the alternative ground that, again, because Plaintiff has moved for summary judgment with regard to this claim, the Court may *sua sponte* grant summary judgment against him with regard to that claim, if the record evidence warrants such a disposition.[54]  Here, I find that the record evidence does, indeed, warrant such a disposition.  Specifically, the following two material facts appear undisputed:

(1)     In or around mid-June of 2005, a restriction was imposed on Plaintiff at Auburn C.F., limiting his visiting privileges to non-contact visits based upon a finding that Plaintiff posed a threat to the safety and security of Auburn C.F. due to his involvement in a prior plot to escape from Sing Sing C.F.;[55] and

(2)     Neither Plaintiff nor his family members have participated in an in-person hearing to challenge the imposition of the restriction limiting Plaintiff's visiting privileges to non-contact visits, although Plaintiff's several grievances challenging the aforementioned restriction of his visiting privileges have all been denied (and those denials have repeatedly been affirmed on

---

[54]     *See Ramsey*, 94 F.3d at 73.

[55]     (*Compare* Dkt. No. 25, at 10, ¶¶ 4, 7 [Plf.'s Rule 7.1 Statement, asserting some of the referenced facts, along with other facts, but not supporting those factual assertions with record citations] *with* Dkt. No. 28, Part 4, ¶¶ 4, 7 [Defs.' Rule 7.1 Response, admitting some of referenced facts, and asserting other facts, but not supporting their factual assertions with record citations], Dkt. No. 25, at 42 [Ex. G to Plf.'s Motion, attaching Plaintiff's grievance dated 6/15/05, reporting restriction on contact-visits on 6/15/05], Dkt. No. 25, at 46 [Ex. H to Plf.'s Motion, attaching Auburn C.F. Interdepartmental Communication dated 6/17/05, from Defendant Burge to Plaintiff, informing him that his visiting privileges will be limited to non-contact status only, and reason for limitation], Dkt. No. 25, at 54-55 [Ex. M to Plf.'s Motion, attaching letter from Defendant Annucci to Plaintiff dated 8/3/05, regarding Defendant Burge's decision and rationale therefor].)

29

appeal), after full consideration of the relevant facts and circumstances.[56]

Based on these undisputed facts, I would find that, even if the Court were to assume for the sake of argument that Plaintiff possessed some sort of limited due process right to contact visits, he was, under the circumstances, afforded all the process that he was due, as a matter of law.

For each of these alternative reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment due process claim regarding the decision to impose restrictions on his visitation privileges.

### C.   Plaintiff's Eighth Amendment Claim Based on Visitation Restriction

Although Defendants do not cross-move for dismissal of Plaintiff's Eighth Amendment claim arising from the restriction of his visitation privileges to "non-contact" visits, I have, in addressing Plaintiff's motion for partial summary judgment on that claim, carefully reviewed Plaintiff's Complaint (and the record evidence) with regard to that claim, and, as a result, I find that the Court should *sua sponte* review the pleading sufficiency of that claim, pursuant to its authority (and duty) to do so under 28 U.S.C. § 1915.  *See, supra,* note 11 of this Report-

---

[56]    (*Compare* Dkt. No. 25, at 10, ¶ 6 [Plf.'s Rule 7.1 Statement, asserting some of referenced facts, but not supporting those factual assertions with record citations] *with* Dkt. No. 28, Part 4, ¶ 5 [Defs.' Rule 7.1 Response, admitting referenced fact, and implicitly denying another fact, but not supporting their assertions with record citations]; *see also* Dkt. No. 25, at 42-49 [Exs. G, H, I, J, K to Plf.'s Motion, attaching Plaintiff's grievance dated 6/15/05 challenging referenced restriction of his visiting privileges, the Auburn C.F. IGRC's response, Defendant Burge's decision on appeal, Defendant Eagen's decision on appeal]; Dkt. No. 25, at 50-56 [Exs. L, M, N to Plf.'s Motion, attaching Plaintiff's letter of appeal to Defendant Goord, dated 6/21/05, challenging referenced restriction of his visiting privileges, and Defendant Annucci's responses thereto]; Dkt. No. 25, at 57-58 [Exs. O, P to Plf.'s Motion, attaching Plaintiff's letter of appeal to newly appointed Auburn C.F. Superintendent, Defendant Graham, dated 11/5/05, requesting reconsideration of restriction on visiting privileges, and Defendant Graham's response thereto].)

Recommendation.

In this claim, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by improperly restricting his visitation privileges to "non-contact" visits.[57]  Plaintiff does not, in his Complaint, in any way allege that Defendants have denied him "non-contact" visitation privileges.[58]  Nor does Plaintiff, in his Complaint, expressly articulate the *duration* of this restriction on his visitation privileges to "non-contact" visits.[59]  Implicitly, however, he alleges that, at the very least, the restriction has occurred for at least seven months and one week, by alleging that the restriction was first imposed on June 30, 2005, and implying that the restriction is on-going as of the date of signing of the Complaint (February 7, 2006)[60]

In any event, and more importantly, Plaintiff's Complaint expressly acknowledges that the restriction was imposed ten days after the imposition of a ten-year sentence in "solitary confinement."[61]  This alleged ten-year sentence is referenced in, and explained by, documents submitted by Plaintiff on his motion for partial summary judgment (and his response to

---

[57]     (Dkt. No. 1, ¶¶ 11-15 [Plf.'s Compl.].)

[58]     (*Id*.)

[59]     (*Id*.)

[60]     (*Id*. ¶ 11 [alleging that the restriction was first imposed on 6/30/05].)  I note that, in his motion papers, Plaintiff claims that one or more corrections officers remarked that the restriction would endure until the year 2050.  (*See*, *e.g.*, Dkt. No. 29, at 5 [Ex. B to Plf.'s Reply Papers].)  However, Plaintiff does not allege (or adduce any evidence) indicating that he will even be incarcerated by DOCS until the year 2050.  *See* NYS DOCS Inmate Locator Service, http://nysdocslookup.docs.state.ny.us/GCA00P00 /WIQ3/WINQ130 [last visited 9/28/07] [indicating that the "Maximum Expiration Date" of Plaintiff's sentence is 5/14/2033].)

[61]     (Dkt. No. 1, ¶ 9 [Plf.'s Compl.].)

Defendants' cross-motion to dismiss).  Those papers, which effectively amend the allegations of

Plaintiff's Complaint for purposes of a motion to dismiss analysis, make clear that the referenced

ten-year sentence was imposed due to Plaintiff's criminal conviction in Westchester County

Court for, among other things, trying to escape from Sing Sing C.F.[62]  As a result, built into

Plaintiff's Eighth Amendment claim is an acknowledgment that the restriction is, at least in some

way, tied to his criminal conviction for trying to escape from prison.

Even viewed with the utmost of special solicitude, Plaintiff's Eighth Amendment

visitation claim fails to state a claim upon which relief may be granted.  From a review of the

relevant law, it appears that, in a majority (if not the entirety) of the circuits–including the

Second Circuit–the denial of contact visitation that Plaintiff alleges does not amount to the

infliction of pain at all, and that, even it did, it does not amount to the sort of wanton (and

penologically unjustified) infliction of pain prohibited by the Eighth Amendment.[63]

---

[62]    *See Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.
17, 1997) ("Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum.") (citing, *inter alia*, *Gill v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]); *Donhauser v. Goord*, 314 F.
Supp.2d 119, 212 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a
motion to dismiss, it is appropriate for the court to consider materials outside the complaint to
the extent they 'are consistent with the allegations in the complaint.'") [citations omitted],
*vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004) (Hurd, J.).

[63]    **Supreme Court:** *See Overton v. Bazzetta*, 539 U.S. 126, 136-137 (2003) (prison
regulation that subjected inmates with two substance-abuse violations to ban of at least two years
on all visitation privileges did not create inhumane prison conditions, or deprive the inmate of
basic necessities, under Eighth Amendment); *Block v. Rutherford*, 468 U.S. 576, 577, 586-89
(1984) (jail's blanket ban on contact visiting privileges with spouses, relatives, children and
friends, was not unconstitutional).

        **Second Circuit:** *See Tafari v. Bennett*, 00-CV-0405, 2001 U.S. Dist. LEXIS
25321, at *13-14 (W.D.N.Y. Sept. 28, 2001) ("The denial of the plaintiff's contact visitations for

For each of these alternative reasons, I recommend that the Court dismiss Plaintiff's

---

the period in question [18 months] in this case [where plaintiff was convicted of disciplinary charge of illegal possession of a weapon] did not constitute a violation of the plaintiff's Eighth Amendment rights.") [citation omitted]; *Smith v. Coughlin*, 577 F. Supp. 1055, 1060-61 & n.8 (S.D.N.Y. 1983) (finding that the conditions of plaintiff's confinement, which included restriction on contact visits, did not violate Eighth Amendment) [citation omitted].

**Third Circuit:** *See Thrower v. N.J. Dept. of Corr.*, 07-CV-3434, 2007 U.S. Dist. LEXIS 66252, at *13-14 (D. N.J. Sept. 7, 2007) ("[T]he Court finds that Plaintiff's [indefinite] loss of visitation privileges [following his disciplinary charge of refusing to submit to drug testing] did not violate his Eighth Amendment rights, and will dismiss Plaintiff's claims based on loss of visitation for failure to state a claim upon which relief may be granted.").

**Sixth Circuit:** *See Conway v. Wilkinson*, 05-CV-0820, 2007 U.S. Dist. LEXIS 21177, at *10-11 (S.D. Ohio March 26, 2007) ("As far as the Court is aware, no case has held that restricting a prisoner either to non-contact or limited contact visits violates that amendment's ban on cruel and unusual punishment.") [citations omitted]

**Seventh Circuit:** *See Saleem v. Helman*, No. 96-2502, 1997 U.S. App. LEXIS 22572, at *6 (7th Cir. Aug. 21, 1997) ("We have previously held that a denial of contact visitation altogether does not violate the Eighth Amendment.") [citation omitted]; *Nkrumah v. Clark*, No. 91-2466, 1992 U.S. App. LEXIS 25067, at *12 (7th Cir. Sept. 24, 1992) (""[D]enial of contact visitation simply does not amount to the infliction of pain [under the Eighth Amendment]. . . . Even if this limitation did impose on Nkrumah some degree of pain, the Eighth Amendment would not forbid restricting inmates in disciplinary units to non-contact units unless the pain were wantonly inflicted or unrelated to rational penological objectives [and this restriction was not either of those things].") [internal citations omitted]; *Caldwell v. Miller*, 790 F.2d 589, 601, n.16 (7th Cir. 1986) (holding that a denial of contact visitation altogether does not violate the Eighth Amendment) [citation omitted]; *Stojanovic v. Humphreys*, 06-CV-0318, 2006 U.S. Dist. LEXIS 73213, at *10-11 (E.D. Wisc. Oct. 6, 2006) ("Denial of contact visitation, however, does not violate the Eighth Amendment.") [citation omitted].

**Ninth Circuit:** *See Toussaint v. McCarthy*, 801 F.2d 1080, 1113-14 (9th Cir. 1986) (restrictions on non-contact visits not an Eighth Amendment violation because, "Denial of contact visitation simply does not amount to the infliction of pain. . . . Even if denial of contact visitation amounted to an infliction of pain, the [E]ighth [A]mendment would not prohibit the denial unless the pain were inflicted wantonly and without penological justification. . . . To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society.") [citations omitted].

**Tenth Circuit:** *See Ricco v. Conner*, 146 F. App'x 249, 255 (10th Cir. 2005) ("[W]e conclude that the five-year restriction [on all visitation privileges] imposed in this case does not violate the Eighth Amendment].") ; *Brown v. PharmChem Lab., Inc.*, 92-CV-3010, 1992 U.S. Dist. LEXIS 15758, at *7 (D. Kan. Sept. 30, 1992) ("The court . . . finds the imposition of loss of visitation [for one year] was a permissible sanction [for a disciplinary conviction of drug possession] and rejects plaintiff's contention the penalty imposed violates the Eighth Amendment."), *aff'd*, 2 F.3d 1160 (10th Cir. 1993).

claim that Defendants violated his Eighth Amendment right to be free of cruel and unusual

punishment by improperly restricting his visitation privileges to "non-contact" visits.

> **D.    Plaintiff's Motion for Partial Summary Judgment**

Because I have concluded above that the three claims at issue in Plaintiff's motion for

summary judgment should be dismissed for failure to state a claim (and that, in the alternative,

two of those claims should be dismissed under Rule 56), I find that Plaintiff's motion for partial

summary judgment should be denied.

Moreover, I reach the same conclusion (i.e., that Plaintiff's motion for partial summary

judgment should be denied) on the alternative basis that none of the eight paragraphs of factual

assertions contained in Plaintiff's Rule 7.1 Statement contains a record citation.[64]  Local Rule 7.1

---

[64]      (*See generally* Dkt. No. 25, at 10-12 [Plf.'s Rule 7.1 Statement].)  I note that
Plaintiff's attachment of a (self-serving) affirmation at the end of his Rule 7.1 Statement,
pursuant to 28 U.S.C. § 1746, is not sufficient to transform the factual assertions therein into
factual assertions *supported by record citations*, as required by Local Rule 7.1.  *See* N.D.N.Y.
L.R. 7.1(a)(3) ("The Statement of Material Facts shall set forth, in numbered paragraphs, each
material fact about which the moving party contends there exists no genuine issue.  Each fact
listed shall set forth a specific citation to the record where the fact is established.").  As an initial
matter, Local Rule 7.1 implicitly makes a distinction between a "Statement of Material Facts"
and "the record."  *Id.*  Moreover, such a verification cannot "serve as admissible evidence in the
event of trial because it fail[s] to demonstrate how [the affiant] . . . [is] competent to testify to the
facts [he or] she allege[s]."  *Corder v. Lucent Tech., Inc.*, 162 F.3d 924, 927 (7th Cir. 1998)
(affirming district court's grant of summary judgment, including trial judge's strict enforcement
of local rule requiring that non-movant support his or her denial of movant's factual assertions
with citations to record evidence and not simply attach a "verification" to his or her response to
movant's statement of uncontroverted material facts).  Finally, such a verification cannot
transform several of Plaintiff's factual assertions into evidence since they are devoid of necessary
specifics.  *See Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose
of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings"); *Meiri v. Dacon*, 759 F.2d 989, 997
(2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of
course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory
and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829
(1985).

clearly provides, "Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established."  N.D.N.Y. L.R. 7.1(a)(3).  It also clearly provides, "<u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion</u>."  *Id*. [emphasis in original].[65]  Because Plaintiff has failed to meet his modest threshold burden on his motion for partial summary judgment, Defendants' failure to respond to the factual assertions contained in Paragraph Numbers 2, 4, 5, 6, and 7 of Plaintiff's Rule 7.1 Statement with admissions or denials that are *supported by record citations*, and their failure to respond at all to the factual assertion contained in Paragraph Number 8 of Plaintiff's Rule 7.1 Statement, is of no consequence.

E.      **Plaintiff's Motion for a Preliminary and Permanent Injunction**

Plaintiff also requests a preliminary and permanent injunction enjoining Defendants from denying Plaintiff's request to participate in the Auburn C.F.'s Intermediate Care Program.  *(See generally* Dkt. No. 4.)  I recommend that the Court deny this request largely for reasons stated by Defendants in their memorandum of law.  (Dkt. No. 28, Part 5, at 4-5 [Defs.' Opp. Memo. of Law].).  In addition to the reasons advanced by Defendants, I rely on the fact that (1) Plaintiff appears to indicate, in his motion papers, that he is currently receiving medication for high blood pressure and possibly depression (which weighs against a finding of irreparable harm),[66] and (2)

---

[65]     I note that the Clerk of Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's *Pro Se* Manual and Local Rules of Practice.

[66]     (*See* Dkt. No. 4, at 12-13 [Ex. A to Plf.'s Motion for Injunction].)

in his motion for partial summary judgment, Plaintiff expressly acknowledges that "clear factual disputes" exist with respect to this claim (which weighs *at least somewhat* against a finding of a likelihood of success on the merits).[67]

Finally, I note that it *appears* that Plaintiff has stated a viable claim with respect to this alleged Eighth Amendment violation,[68] although I express no opinion as to whether that claim would survive a motion for summary judgment, should Defendants decide to file such a motion.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' cross-motion for partial dismissal of Plaintiff's Complaint (Dkt. No. 28) be **GRANTED** for the reasons stated above in Parts III.A. and III.B. of this Report-Recommendation, and that Plaintiff's Fifth Amendment double jeopardy claim and Fourteenth Amendment due process claim based on the restriction of his visitation privileges be therefore **DISMISSED**; and it is further

**RECOMMENDED** that Plaintiff's Eighth Amendment claim based on the restriction of his visitation privileges be ***SUA SPONTE* DISMISSED** for failure to state a claim upon which relief may be granted, for the reasons stated above in Part III.C. of this Report-Recommendation; and it is further

**RECOMMENDED** that Plaintiff's motion for partial summary judgment (Dkt. No. 25)

---

[67]     (Dkt. No. 25, at 1, ¶ 1 [Plf.'s Decl., stating, "I have not moved for summary judgment on the remaining portions of my complaint [including his referenced Eighth Amendment claim] because it [sic] contains clear factual disputes."].)

[68]     *Cf. Carter v. Devito*, 02-CV-0087, 2006 U.S. Dist. LEXIS 12868, at *25 (W.D.N.Y. Mar. 7, 2006) (addressing similar Eighth Amendment claim on defendants' motion for summary judgment, not a motion to dismiss); *Spiers v. Greene*, 94-CV-0219, 1995 U.S. Dist. LEXIS 20431, at *11-13 (W.D.N.Y. June 16, 1995) (addressing analogous Eighth Amendment claim on defendants' motion for summary judgment, not a motion to dismiss).

be **<u>DENIED</u>** for the reasons stated above in Part III.D. of this Report-Recommendation; and it is further

  **RECOMMENDED** that Plaintiff's motion for a preliminary and permanent injunction (Dkt. No. 4) be **<u>DENIED</u>** for the reasons stated above in Part III.E. of this Report-Recommendation.

  Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 28, 2007
   Syracuse, New York

           _George H. Lowe_
           United States Magistrate Judge